IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL DEBT RELIEF LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SEASON 4, LLC AND MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC<br><br>    Defendants. | Case No.<br><br><br><br>**COMPLAINT** |

Plaintiff National Debt Relief LLC ("Plaintiff" and/or "NDR"), for its Complaint against Defendants Season 4, LLC ("S4") and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg Law Firm"; collectively with S4, "Defendants") hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark dilution under federal and state laws, false advertising and violations of New York's Deceptive Acts and Practices statute arising out of Defendants' wrongful and unlawful advertising using Plaintiff NDR's trademark, and Defendants' intent to trade on NDR's goodwill and reputation to disparage NDR and dilute its trademark.

## THE PARTIES

2. Plaintiff National Debt Relief LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located in New York, New York.

3. Defendant Season 4, LLC is a limited liability organized and existing under the laws of the State of New Jersey, with its principal place of business located in Warren, New Jersey. S4 operates the website https://www.classaction.org/, which is interactive and permits the

1

exchange of information between users in other states, including but not limited to users in New York, and Defendant S4. The classaction.org website advises users that information submitted regarding alleged class action claims will be forwarded to the law firm S4 is working with on a particular matter. Those same law firms, which are in various states throughout the country, including in New York, also sponsor S4's investigations into those potential class action lawsuits.

4. Defendant Milberg Coleman Bryson Phillips Grossman, PLLC is a professional limited liability company, with its principal place of business in Knoxville, Tennessee. The Milberg Law Firm is headquartered in Tennessee but is registered to do business in New York, has offices in New York and has attorneys admitted to practice law in New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the claims that arise under state statutory law under 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. This Court has personal jurisdiction over each of the Defendants because each of the Defendants transact business in New York, each of the Defendants are engaged in substantial business and/or have committed tortious acts within this District, which acts form a substantial part of the events or omissions giving rise to NDR's claims, each of the Defendants have purposefully availed itself of the benefits of the New York forum, and each of the Defendants' tortious acts caused injury to NDR in New York.

7. Defendant Milberg Law Firm has offices in New York and lawyers licensed to do business in New York.

8. Defendant S4 directs its advertisements to consumers throughout the country, including consumers in New York. Additionally, S4 has an interactive website that permits the exchange of information between S4 and consumers, including consumers in New York.

9. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because, Defendants conduct business in this District, Defendant Milberg Law Firm has offices in this District, a substantial part of the conduct giving rise to the claims asserted herein occurred in this District, and NDR is suffering harm in this District.

## FACTUAL BACKGROUND

### A. NDR is a Nationally Recognized Debt Relief Company

10. NDR is a nationally recognized debt relief company that has helped more than 60,000 people get out of debt and get their lives back on track.

11. Since its founding in 2009, NDR has settled more than $1 billion in unsecured debt.

12. NDR is accredited by the American Fair Credit Council.

13. Unlike many of its competitors, NDR is transparent about its fees, has actual and reliable customer service, and it allows clients to monitor their progress 24 hours a day, 7 days a week on NDR's website.

14. Indeed, Forbes named NDR one of the best debt settlement companies of August 2023. https://www.forbes.com/advisor/debt-relief/best-debt-settlement-companies/.

15. CNBC has also ranked NDR as the best debt settlement company for large debts. https://www.cnbc.com/select/best-debt-relief-companies/.

16. Further, NDR also has an A+ rating with the Better Business Bureau.

B. <u>**NDR Trademark**</u>

17. NDR is the exclusive owner of the following mark which was registered on the Principal Register of the United States Patent and Trademark Office (the "USPTO"):



(the "NDR Mark").

18. The NDR Mark, registration number 5394086, was issued on February 6, 2018. A copy of the Registration Certificate is attached hereto as **Exhibit A**.

19. Per the NDR Trademark Registration Certificate:

The [NDR] [M]ark consists of a shield design with a red background and twelve white stars in the upper left portion and blue and white stripes in the lower right portion, all appearing to the left of the word "NATIONAL" in large blue capital letters. Below the wording "NATIONAL" are the words "DEBT RELIEF" in smaller black capital letters between two black lines. The entire mark is on a white background.

C. <u>**The Unlawful Advertisement and Sign Up Page**</u>

20. On or around July 25, 2023 (or earlier), S4, which is better known as classaction.org, began targeting consumers and posting the following advertisement as seen on Facebook, but upon information and belief may have been placed elsewhere as well:



(the "Unlawful Ad").

21.     The Unlawful Ad targets consumers and clients of NDR, which includes residents of New York where NDR is headquartered and does business.

22.     The Unlawful Ad falsely states that NDR "may have violated federal and state laws with how it charges customers – including by tacking on excessive and illegal fees to their monthly payments."

5

23. The Unlawful Ad impermissibly uses the NDR Mark to try to solicit consumers, specifically NDR clients, to sign up for a supposed arbitration proceeding against NDR by enticing consumers with promises of a possible recovery of up to $5,000.

24. Defendants are improperly and unlawfully using the NDR Mark and the Unlawful Ad to not only disparage NDR, but to prey on the very people NDR helps as part of a scheme for Defendants to solicit business for their own financial gain.

25. Upon information and belief, the Milberg Law Firm engages in conduct that includes but is not limited to, generating customers of NDR for its own referral purposes to third party law firms around the country, thereby not acting as a law firm, but instead with commercial (for-profit) intent, to sell off leads to third parties. Upon information and belief, the Milberg Law Firm uses inaccurate phrases, bad-mouthing, and the intellectual property of NDR to attack and generate its revenue.

26. Upon clicking on the Unlawful Ad, consumers are directed to the page found at: https://join.classaction.org/sign-up/national-debt-relief?fbclid=IwAR2ir6NpleoTr1YDow8OkI7hj5ulfY5J9morQCxicM1t4HTNuFqQaebMJr0 (the "S4 Sign Up Page"). A copy of the S4 Sign Up Page is attached hereto as **Exhibit B**.

27. The S4 Sign Up Page makes additional false statements including that clients of NDR "may have grossly overpaid for the company's services," that NDR "may have violated both federal and state consumer protection laws with how they charged consumers who signed up to have their debts resolved," and that NDR may have "tacked on excessive – and illegal – fees for their services or otherwise charges customers improperly."

28. The S4 Sign Up Page again attempts to unlawfully solicit consumers to pursue baseless claims against NDR.

29. The S4 Sign Up Page provides that the Milberg Law Firm is prepared to handle the matter and that the information submitted on the S4 Sign Up Page will be forwarded to the Milberg Law Firm, who is sponsoring the supposed "investigation" into NDR.

30. In addition to Defendants' improper use of the NDR Mark, the claims made in the Unlawful Advertisement and the S4 Sign Up Page are false and misleading and have harmed and continue to harm Plaintiff NDR.

31. Plaintiff NDR has retained the legal services of Greenspoon Marder, LLP and is entitled to recover all reasonable attorneys' fees, court costs, and expenses incurred in litigating this action against Defendants.

32. All conditions precedent to the maintenance of the causes of action set forth herein have occurred, been waived or excused.

## COUNT I
## FEDERAL TRADEMARK DILUTION, 15 U.S.C. § 1125(C)

33. NDR incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

34. The NDR Mark is famous and distinctive and became famous and distinctive before Defendants' conduct alleged herein.

35. NDR has used the NDR Mark in interstate commerce continuously since at least as early as June, 2012.

36. NDR has made substantial advertising expenditures related to the NDR Mark.

37. Advertising featuring the NDR Mark has been featured in online and print media nationwide.

38. The NDR Mark has been widely publicized by NDR and third parties.

39. The NDR Mark is used in connection with services that generate significant annual revenue.

40. The NDR Mark is used in connection with services that are provided to tens of thousands of customers nationwide.

41. NDR and services provided by NDR under the NDR Mark are the subject of extensive unsolicited media coverage.

42. The NDR Mark is widely recognized by the consuming public of the United States as a designation of source for NDR's services and is therefore a famous mark.

43. Defendants' conduct alleged herein constitutes trademark uses in commerce that are likely to dilute the distinctive quality of the NDR Mark, by both blurring and tarnishment, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

44. Upon information and belief, Defendants have engaged in such conduct willfully, deliberately, and in conscious disregard of NDR's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

45. By reason of the foregoing, NDR has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1116, *et seq.*

46. Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to NDR's rights in the NDR Mark and NDR's business, reputation and goodwill, which cannot be adequately compensated solely by monetary damages. Therefore, NDR has no adequate remedy at law and seeks preliminary and permanent injunctive relief pursuant to 15 U.S.C. §§ 1116 *et seq.*

## COUNT II
## FALSE ADVERTISING, 15 U.S.C. § 1125(A)

47. NDR incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

48. Defendants are engaged in interstate commerce.

49. As detailed herein, Defendants are misrepresenting and continue to misrepresent that NDR allegedly "may have violated federal and state laws with how it charges customers- including by tacking on excessive and illegal fees to their monthly payments" that NDR customers "may have grossly overpaid for the company's services," that NDR "may have violated both federal and state consumer protection laws with how they charged consumers who signed up to have their debts resolved," and that NDR may have "tacked on excessive – and illegal – fees for their services or otherwise charges customers improperly."

50. Defendants' statements in the Unlawful Ad and S4 Sign Up Page are literally false, deceived and will continue to deceive consumers and otherwise have the tendency to deceive potential consumers.

51. Defendants' deceptive conduct was knowing, willful and intentional, and undertaken with knowledge that the conduct would or was highly likely to result in harm to Plaintiff NDR.

52. Plaintiff NDR has suffered and will continue to suffer injury as a result of Defendants' deception of consumers.

53. Defendants' conduct has caused and will continue to cause irreparable injury to Plaintiff NDR, including declining sales, loss in market share and goodwill, frivolous lawsuits, and harm to Plaintiff NDR's reputation, for which there is no adequate remedy at law.

## COUNT III
**TRADEMARK DILUTION UNDER NEW YORK LAW (N.Y. GEN. BUS. LAW § 360-*L*)**

54. NDR incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

55. The NDR Mark is famous and well known throughout New York, within the meaning of New York General Business Law § 360-*l*. As a result of use over several years, and extensive advertising and promotion using the NDR Mark, such mark has been uniquely and exclusively associated in New York and elsewhere with NDR and its services.

56. Defendants' use of the NDR Mark in the Unlawful Ad is likely to dilute the distinctive quality of the NDR Mark by, among other things, associating NDR with the false claims being made by Defendants. Such conduct violates New York General Business Law § 360-*l*.

57. Defendants' conduct has caused, and unless enjoined, will continue to cause disparagement, damage, and lessening of the distinctiveness of the NDR Mark. Defendants' actions were and continue to be deliberate and willful, and were and are for the express purpose of disparaging NDR and diluting the NDR Mark.

58. Defendants, unless permanently enjoined, are causing and will continue to cause immediate and irreparable harm to NDR and its goodwill and reputation. NDR has no adequate remedy at law.

## COUNT IV
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

59. NDR incorporates by reference the allegations in paragraphs 1 through 32 above as if set forth fully herein.

60. Defendants violated § 349 by engaging in the deceptive and misleading acts, practices and representations described herein.

61. Defendants committed deceptive and misleading acts, practices and representations throughout the State of New York.

62. Defendants' false and misleading advertisements by way of the Unlawful Ad and the S4 Sign Up Page harm Plaintiff NDR and the public at large by falsely trying to convince consumers that consumers may have a claim against NDR when such representations are really only being made for Defendants' own financial gain.

63. Defendants' deceptive and misleading acts, practices, and representations are consumer oriented and directly impact the public.

64. Defendants' deceptive and misleading acts, practices, and representations cause harm to the public that is separate and distinct from the harm caused to Plaintiff by Defendants' dilution of the NDR Mark.

65. As a direct and proximate result of Defendants' deceptive and misleading acts, practices, and representations as described herein in violation of New York General Business Law § 349, Plaintiff NDR, as well as the public, have and will continue to suffer significant damages, and Plaintiff is entitled to such damages from Defendants, jointly and severally, including actual damages, statutory damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. An Order entering judgment in favor of Plaintiff NDR and finding that Defendants acted with willful intent to trade on NDR's reputation and goodwill and dilute the NDR Mark;

B. An Order awarding Plaintiff a preliminary and permanent injunction against Defendants, their agents, representatives, employees, successors, assigns and all persons acting in concert or privity with them, from using the NDR Mark in connection with the advertising,

promotion, sale and distribution of their business and/or goods and services in the United States, as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages, disgorgement of profits, corrective advertising, and costs and attorneys' fees in connection with Defendants' trademark dilution and false advertising;

    C.     An Order entering judgment in favor of Plaintiff and finding Defendants violated provisions of 15 U.S.C. § 1125(a) by posting false and misleading advertisements regarding NDR;

    D.     An Order awarding Plaintiff all reasonable attorneys' fees, costs and disbursements incurred as a result of this action because of the exceptional nature of this case; and

    E.     An Order awarding Plaintiff NDR actual damages, statutory damages, punitive damages, preliminary and permanent injunctive relief, attorneys' fees, costs and such other relief as provided by the statutes cited herein and as the Court deems just and proper.

Dated: August 15, 2023

Respectfully submitted,

By: */s/ Gavin M. Strube*
**GREENSPOON MARDER LLP**
GAVIN M. STRUBE
SDNY. Bar No. GS8314
Email: gavin.strube@gmlaw.com
590 Madison Avenue
New York, New York 10022
Tel: 212-524-5023

BETH-ANN E. KRIMSKY
NY Bar No. 2321115; FL Bar No. 968412
Email: beth-ann.krimsky@gmlaw.com
Email: gabby.mangar@gmlaw.com
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Tel: 954-524-2427

*Counsel for Plaintiff National Debt Relief LLC*